IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TESSENDERLO KERLEY, INC., | No. C 11-03955 CRB |
| Plaintiff, | **ORDER GRANTING MOTION TO TRANSFER** |
| v. | |
| D & M CHEM, INC., | |
| Defendant. / | |

Defendants D&M Chem, Inc. ("D&M") have filed a Motion to Transfer this patent case to the Eastern District of Washington. See dkt. 14. Because both the private and public interest factors favor transfer, the Court GRANTS the Motion.

## I.    BACKGROUND

Defendant D&M is a small, family-owned company, the principal place of business of which is Moxee, Washington, within the Eastern District of Washington. Mot. at 2. Plaintiff Tessenderlo Kerley, Inc. ("TKI") is a large Delaware company, with a principal place of business in Phoenix, Arizona. Compl. (dkt. 1) ¶ 1. TKI is registered to do business in Washington State, and maintains an office in Yakima, Washington, which is within the Eastern District of Washington. Mot. at 2. The two companies are "direct competitors in the market for the manufacture and sale of crop protectants." Compl. ¶ 10.[1]

---

[1] The products at issue protect agricultural crops from "damage from various physiological disorders such as sunburn and heat stress." See id. ¶¶ 17, 21.

1 TKI has filed suit against D&M, alleging that D&M's "Eclipse" product infringes two
2 of TKI's patents. See Compl. ¶ 20. D&M moves to transfer the case to the Eastern District
3 of Washington, arguing that "both parties have substantial connections to the Eastern District
4 of Washington, most of the likely fact and expert witnesses are in Washington, virtually all
5 of the documents are in Washington, and most of the relevant actions occurred in
6 Washington." Mot. at 2.

## II. DISCUSSION

Pursuant to 28 U.S.C. § 1404(a), D&M moves to transfer the case to the Eastern District of Washington, where its business is located. District courts have discretion to adjudicate motions for transfer according to an "individualized, case-by-case consideration of convenience and fairness." See Jones v. GNC Franchising, Inc., 211 F.3d 495, 498 (9th Cir. 2000) (internal quotations and citations omitted). A motion to transfer should not merely shift the inconvenience from the moving party to the opposing party. See Decker Coal Co. v. Commonwealth Edison Co., 805 F.2d 834, 843 (9th Cir. 1986). To prevail on a motion to transfer, a moving party must establish (1) that venue is proper in the transferor district; (2) that the transferee district is one where the action might have been brought; and (3) that the transfer will serve the convenience of the parties and witnesses and will promote the interests of justice. See Goodyear Tire & Rubber Co. v. McDonnell Douglas Corp., 820 F. Supp. 503, 506 (C.D. Cal. 1992). The parties here do not dispute the first two factors,[2] and indeed, the Court should find that venue is proper here and that the case might have been brought in the Eastern District of Washington.

When considering a motion to transfer venue, the factors a court may consider include (1) the plaintiff's choice of forum; (2) the convenience of the parties; (3) the convenience of the witnesses; (4) the ease of access to the evidence; (5) the familiarity of each forum with the applicable law; (6) any local interest in the controversy; and (7) the relative court

---

[2] D&M concedes that "it is possible, although far from clear, that D&M might be subject to jurisdiction in the Northern District of California under a stream of commerce theory." Mot. at 4. It also points out in its Reply that TKI "does not dispute that this action could have been brought in the Eastern District of Washington." Reply (dkt. 33) at 1.

2

congestion and time of trial in each forum. See Vu v. Ortho-McNeil Pharm., Inc., 602 F. Supp. 2d 1151, 1156 (N.D. Cal. 2009) (citing Williams v. Bowman, 157 F. Supp. 2d 1103, 1106 (N.D. Cal. 2001)).

### 1.     Private Interest Factors

Though a plaintiff's choice of forum is usually entitled to deference, Decker Coal, 805 F.2d at 843, it is entitled to less deference when a plaintiff chooses to litigate away from its home, see Williams, 157 F. Supp. 2d at 1106. It is also entitled to less deference when the forum lacks a significant connection to the allegations in the complaint. Id.; see also Lou v. Belzberg, 834 F.2d 730, 739 (9th Cir. 1987) (where operative facts have not occurred in forum, plaintiff's choice entitled to "only minimal consideration"). The Northern District of California is not TKI's home, and the operative facts – the actual infringing of the patent – did not occur here. Accordingly, this factor weighs only minimally against transfer.

Next, neither party is located in this district. See Mot. at 2; see also Reply (dkt. 33) at 5 (discussing TKI website, which lists headquarters in Arizona and related offices in a handful of states, including Washington, but not including California). TKI argues in its Surreply that it "has a substantial presence in California, and California represents the single largest concentration of TKI's crop protectant business operations of any state," Surreply (dkt. 38-2) at 2, but even accepting that representation, TKI neither ties its California presence to this district nor explains how it impacts the parties' convenience. Moreover, TKI has an office in Washington, and "[a]ll of D&M's employees are located in Washington." Mot. at 2. It would be much easier for D&M to litigate in Washington, and the only evidence TKI has offered for why Washington would be any more difficult than California[3] is that "[t]he lack of airports around the Eastern District of Washington . . . to which direct flights are available for TKI's personnel and other material witnesses . . . makes transfer inconvenient" compared to the Northern District's "major airports." Second Cassidy Decl. ¶

---

[3] D&M reasons that "the inventors of TKI's patents are clearly not California residents and they will have to travel to the west coast regardless of whether this action proceeds in California or Washington." See Reply at 8.

3

19.[4] This argument is unconvincing, as it would lead to the transfer of all cases to courts in big cities; in addition, if this case went to trial, it is unlikely that TKI would fly in and out every day. While – as Plaintiff's counsel argued at the motion hearing – a transfer of venue should not merely shift the inconveniences from one party to the other, see Decker Coal, 805 F.2d at 843, this is not a case where the inconvenience faced by each side is equal. This factor favors transfer.

As for the convenience of witnesses, D&M asserts that it intends to rely on researchers at the Washington State University, located in the Eastern District of Washington, for testimony about the industry and D&M's testing and development of the accused product. See Mot. at 3. It also asserts that its business partners "who are knowledgeable about D&M's products and D&M's corresponding marketing and sales efforts" are also in the Eastern District of Washington. Id. And it asserts that the "vast majority of its product sales are to Washington." Id. D&M further asserts that all of the named inventors on TKI's asserted patents are outside of the Northern District of California. Id. TKI responds that "non-party witnesses include end customers who are located throughout the United States, as well as Purfresh employees who are located in this district." Opp'n (dkt. 32) at 6; see also Cassidy Decl. ¶¶ 11-12. But TKI answers that only a "relatively small amount of [its product] ended up in California" that when it did ship to California, it identified the product as a "foliar nutrient," a usage the complaint does not challenge. See Reply at 4. Even if the sale of product to California (as part of sales "throughout the United States") was relevant, however, that would not outweigh the numerous witnesses identified by D&M in the Eastern District of Washington. This factor favors transfer.

Most significant in this case is the ease of access to evidence. "In patent infringement cases, the bulk of the relevant evidence usually comes from the accused infringer. Consequently, the place where the defendant's documents are kept weighs in favor of

---

[4] Its statement in the Surreply that litigating in Washington "would severely inconvenience and burden TKI and other witnesses" is entirely conclusory. See Surreply at 2; Second Cassidy Decl. ¶ 18.

4

transfer to that location." In re Genentech, Inc., 566 F.3d 1338, 1346 (Fed. Cir. 2009). D&M represents that "[a]ll of D&M's research and development efforts relating to the Eclipse product, including all of its field tests, were accomplished within Washington State." Mot. at 3. It continues, "D&M's research documentation, books and records relating to its development, marketing and sales of the Eclipse product all are located in the Eastern District of Washington, as are all the present and former D&M employees and personnel who were involved in or otherwise have knowledge of the development, marketing and sales of the Eclipse product." Id. Moreover, "[a]ll of the Eclipse product has been manufactured in Washington State." Id. Overwhelmingly, the evidence is in the Eastern District of Washington. Although it is true that "[g]iven technological advances in document storage and retrieval, transporting documents between districts does not generally create a burden," Brackett v. Hilton Hotels Corp., 619 F.Supp. 2d 810, 820 (N.D. Cal. 2008) (internal citation omitted), it is no less true that "[l]itigation should proceed where the case finds its center of gravity," see Hoefer v. U.S. Dep't of Commerce, 00-0918, 2000 WL 890862, at *3 (N.D. Cal. June 28, 2000). The center of gravity of this case is the Eastern District of Washington. Accordingly this factor, too, favors transfer.

One additional private interest factor is worthy of discussion: TKI argues that there is a second case in this district in which "TKI is asserting the same patents. . . against another party." Opp'n at 5.[5] It argues that allowing this case and that case to proceed together in the Northern District of California would promote efficiency. Id. (citing Cont'l Grain Co. v. The FBL-585, 364 U.S. 19, 26 (1960). In Cont'l Grain Co., 364 U.S. at 20, the trial court had transferred an action for damages to cargo resulting from alleged unseaworthiness to the district where the sinking of the barge occurred. The Court explained that "Although the action in New Orleans was technically brought against the barge itself as well as the owner, the obvious fact is that, whatever other advantages may result, this is an alternative way of bringing the owner into court." Id. at 26. Here, there is no dispute that the two cases involve "different, unrelated defendants and different allegedly infringing products." See Reply at 7.

---

[5] See Case No. CV 11-04100 PSG.

1  The evidence involved in both cases would appear to be quite different, and it does not
2  appear that a holding that there was infringement in one case but was not infringement in the
3  other would be inconsistent.  Indeed, the Court recently declined to relate the two cases.
4  See dkt. 36.  Accordingly, that the other case exists does not weigh against transfer, and the
5  private factors weigh strongly in favor of it.

### 2. Public Interest Factors

TKI asserts that "[t]his district court is fully capable of hearing and deciding the patent issues involved in the present case" and adds that the Northern District "has extensive experience with patent litigation, so much so that" it has its own local patent rules. See Opp'n at 7.  But this is a patent case.  See generally Compl.  "Questions of federal law may be applied by any federal court, and this Court is not necessarily better able to apply the . . . statute than federal courts in other districts."  San Francisco Technology, Inc. v. The Glad Products Co., No. 10-CV-00966, 2010 WL 2943537, at *6 (N. D. Cal. July 26, 2010).  This factor is therefore neutral.

Additionally, California has no interest in resolving a dispute between two foreign companies, the operative facts of which did not take place here.  On the other hand, the Eastern District of Washington would seem to have an interest in resolving a dispute between two companies that do substantial business there.

Finally, D&M argues that the Eastern District of Washington is less congested than the Northern District because "the average scheduled time to trial for patent cases filed within the last several years has been under two years, as compared to the Northern District of California's average time to trial of just under three years."  Mot. at 5.  TKI disputes that statistic, arguing that "such statistics fail to account for factors such as the number of patents involved in the litigations, the frequency and duration of cases that settle before trial, and other non-patent counts pursued during discovery that add complexity."  Opp'n at 7.  Of course, that is how averages work – but even TKI does not suggest that the case would progress more quickly in this district, making this factor at best neutral.

Accordingly, the public factors slightly favor transfer.

6

**III.   CONCLUSION**

For the foregoing reasons, the Court GRANTS the Motion to Transfer.

**IT IS SO ORDERED.**

Dated: November 4, 2011

CHARLES R. BREYER
UNITED STATES DISTRICT JUDGE